# UNITED STATES DISTRICT COURT
# DISTRICT OF CONNECTICUT

| | | |
|---|---|---|
| CHAZ O. GULLEY, | : | |
|     Plaintiff, | : | No. 3:19-cv-310 (SRU) |
| | : | |
| v. | : | |
| | : | |
| LIZON, et al., | : | |
|     Defendants. | : | |
| | : | |

## INITIAL REVIEW ORDER RE AMENDED COMPLAINT

Chaz O. Gulley ("Gulley"), currently confined at Northern Correctional Institution in Somers, Connecticut, filed this complaint *pro se* under 42 U.S.C. § 1983 alleging that the defendants used excessive force against him. He named eight defendants: Captain Lizon, Lieutenant Blackstock, Correctional Officers Caron, Titus, and Severance, Nurses Ellen Durko and Victoria Scruggs, and D.H.O. Lieutenant Nicole Prior. Gulley asserted claims for use of excessive force and deliberate indifference to his injuries.

On April 10, 2019, I filed an Initial Review Order dismissing the claims against defendants Prior, Lizon, Caron, Titus, Severance, and Durko for failure to state plausible claims for relief and permitting the case to proceed on the excessive force claim against defendant Blackstone and the deliberate indifference to medical needs claim against defendant Scruggs. ECF No. 7. Gulley was permitted to file an amended complaint to plead additional facts to support the claims against these defendants and has now done so. Upon review of the additional allegations, the complaint will proceed against all defendants except Prior.

Under section 1915A of Title 28 of the United States Code, I must review prisoner civil complaints and dismiss any portion of the complaint that is frivolous or malicious, that fails to state a claim upon which relief may be granted, or that seeks monetary relief from a defendant who is immune from such relief. 28 U.S.C. § 1915A. Although detailed allegations are not required, the complaint must include sufficient facts to afford the defendants fair notice of the claims and the grounds upon which they are based and to demonstrate a plausible right to relief. *Bell Atlantic v. Twombly*, 550 U.S. 544, 555-56 (2007). Conclusory allegations are not sufficient. *Ashcroft v. Iqbal*, 556 U.S. 662, 678 (2009). The plaintiff must plead "enough facts to state a claim to relief that is plausible on its face." *Twombly*, 550 U.S. at 570. Nevertheless, it is well-established that "[*p*]*ro se* complaints 'must be construed liberally and interpreted to raise the strongest arguments that they suggest.'" *Sykes v. Bank of Am.*, 723 F.3d 399, 403 (2d Cir. 2013) (quoting *Triestman v. Fed. Bureau of Prisons*, 470 F.3d 471, 474 (2d Cir. 2006)); *see also Tracy v. Freshwater*, 623 F.3d 90, 101-02 (2d Cir. 2010) (discussing special rules of solicitude for *pro se* litigants).

I. <u>Allegations</u>

On April 16, 2018, Gulley was found guilty at a disciplinary hearing of assault on a correctional employee. As a result of the guilty finding, Gulley was returned to Phase One of the Security Risk Group ("SRG") Program. ECF No. 1, ¶ 7. Gulley believed that Hearing Officer Prior had been pressured to find him guilty and covered his cell door window in protest. *Id*., ¶¶ 8-9.

Lieutenant Blackstock deployed a chemical agent to get Gulley to remove the covering.

2

*Id.*, ¶ 10. Lieutenant Blackstock then ordered Gulley placed on in-cell restraints. *Id.*, ¶ 11. Fifteen minutes later, Gulley covered the cell door window with his mattress in protest over the in-cell restraints. *Id.*, ¶ 12. Captain Lizon supervised officers Caron, Titus and Severance in a use of force that left Gulley injured. Officers Caron, Titus and Severance slammed Gulley against the wall with their plastic shields and then punched him and threw him on the bunk. During this time, Gulley remained in in-cell restraints. Lieutenant Blackstock stood by and watched. *Id.*, ¶ 13.

Gulley was experiencing severe pain. When Nurse Durko came to check Gulley's injuries, Lieutenant Blackstock claimed that Gulley was being defiant. *Id.*, ¶ 14. Nurse Durko finally ignored Gulley's complaints of pain and left with the officers. She provided no treatment for the injuries to Gulley's back, neck and ribs. *Id.*, ¶ 15.

On April 18, 2018, when the in-cell restraints were removed, Gulley's ankles and wrists were swollen and bruised. Gulley complained of pain to Nurse Scruggs. *Id.*, ¶ 16. Nurse Scruggs noted in Gulley's medical chart that she saw no injuries. She did note Gulley's complaints of pain. *Id.,* ¶ 17. Gulley believes that Nurse Scruggs deliberately fabricated her report. *Id.*, ¶ 18. The use of force caused Gulley to experience pain, swelling, and limping. The incident has caused him to suffer fear, anxiety, humiliation and emotional distress. *Id.*, ¶ 19.

II.     Analysis

Gulley asserts use of excessive force claims against defendants Blackstock, Lizon, Caron, Titus, and Severance and deliberate indifference to serious medical needs against defendants Durko and Scruggs.

A.      Use of Excessive Force

Gulley describes two incidents that involve the use of force.  First, he alleges that Lieutenant Blackstock ordered the use of in in-cell restraints and deployed a chemical agent to gain his compliance with orders.  Second, Gulley alleges that Captain Lizon supervised Officers Caron, Titus and Severance as they slammed Gulley to the wall and punched him while he was restrained.

To state a claim for use of excessive force in violation of the Eighth Amendment, Gulley must allege facts establishing objective and subjective components.  *See Sims v. Artuz*, 230 F.3d 14, 20-21 (2d Cir. 2000).  The objective component focuses on the harm done to the prisoner in light of contemporary standards of decency.  The amount of harm required depends on the nature of the claim.  *Id.* at 21.  Although some degree of injury is usually required, the prisoner need not show that he suffered a significant injury to state a claim for use of excessive force.  *See Wilkins v. Gaddy*, 559 U.S. 34, 34 (2010) ("[T]he use of excessive physical force against a prisoner may constitute cruel and unusual punishment [even] when the inmate does not suffer serious injury.") (quoting *Hudson v. McMillian*, 503 U.S. 1, 4 (1992)).  However, "not 'every malevolent touch by a prison guard gives rise to a federal cause of action.'"  *Id.* at 37 (quoting *Hudson*, 503 U.S. at 9).  The subjective component of the excessive force standard requires a showing that the use of force was "carried out 'maliciously and sadistically' rather than as part of 'a good faith effort to maintain or restore discipline.'"  *Id.* at 40 (quoting *Hudson*, 503 U.S. at 9).

The extent of the inmate's injuries is one factor the court may use to determine whether correctional staff could "plausibly" have considered the force necessary in a particular situation.  *Hudson*, 503 U.S. at 7.  Other factors include "the need for application of force, the relationship

4

between that need and the amount of force used, the threat reasonably perceived by the responsible officials, and any efforts made to temper the severity of a forceful response." *Id.* (internal quotation marks and citation omitted).

In both the Complaint and Amended Complaint, Gulley alleges that Lieutenant Blackstock ordered him placed in in-cell restraints because he refused repeated orders to uncover his window and then deployed a chemical agent to obtain Gulley's compliance. The documents attached to the Complaint show that Gulley uncovered his window only "eventually." ECF No. 1 at 6.

When considering claims relating to the use of restraints, courts consider the circumstances surrounding use of the restraints, including both the length of time the restraints were applied and the objective sought to be achieved through their use. *See Alston v. Butkiewicus*, 2012 WL 6093887, at *11 (D. Conn. Dec. 7, 2012). Maintaining order and security in a prison is a legitimate penological objective. Thus, the use of restraints that are reasonably related to maintaining prison order and security, without more, does not violate the Eighth Amendment. *See Dolphin v. Manson*, 636 F. Supp. 229, 234 (D. Conn. 1986) (citing *Bell v. Wolfish*, 442 U.S. 520, 540 (1979)); *see also Shehan v. Erfe*, 2017 WL 53691, at *8-9 (D. Conn. Jan. 4, 2017) (noting that Department of Correction Administrative Directive 6.5, section 8(A)(4) permits supervisors to use in-cell restraints to ensure compliance with an order and to maintain prison order, safety, and security). When reviewing the initial complaint, I noted that the grievance attached to the Complaint indicated that Gulley was placed in restraints "to prevent further noncompliant acutely disruptive behavior." ECF No. 1 at 7. Because he was no longer defying an order, I could not discern whether the restraints were being used to maintain order or

5

merely for punishment. I also recognized that "[t]here is consensus among courts in this circuit that tight handcuffing does not constitute excessive force unless it causes some injury beyond temporary discomfort." *Shehan*, 2017 WL 53691, at *10 (quoting *Lozada v. City of New York*, 2013 WL 3934998, at *5 (S.D.N.Y. July 29, 2013)) (internal quotation marks and citations omitted); *see also Seiler v. Semple*, 2018 WL 3935033, at *5 (D. Conn. Aug. 16, 2018) (noting that "lack of a continuing injury beyond temporary discomfort is fatal to an excessive force claim") (citation and internal quotation marks omitted). Gulley alleges that, when the restraints were removed, his wrists and ankles were swollen, bruised, and painful, and that he continues to experience pain. Based on allegations, I was unable to determine whether Gulley suffered temporary discomfort or a continuing injury. Thus, I permitted the claim against defendant Blackstock to proceed for further development of the record.

In the Complaint, Gulley's second excessive force claim consisted of one conclusory statement, that Captain Lizon supervised officers Caron, Titus and Severance in a use of excessive force. I concluded that the statement was insufficient to state a plausible claim for use of excessive force but permitted Gulley to amend his complain to describe the actions taken by defendants Lizon, Caron, Titus, and Severance.

In the Amended Complaint, Gulley alleges that Captain Lizon watched while defendants Caron, Titus and Severance slammed him against the wall with their plastic shields and then punched him and threw him on the bunk. Gulley suffered injuries to his ribs, neck and back. I conclude that the additional allegation, especially punching Gulley while he was restrained, is sufficient to state a plausible claim for use of excessive force against defendants Lizon, Caron, Titus, and Severance.

6

B.  Deliberate Indifference to a Serious Medical Need

Gully alleges that Nurses Durko and Scruggs were deliberately indifference to his serious medical needs. Deliberate indifference to serious medical needs occurs when an official knows that an inmate faces a substantial risk of serious harm and disregards that risk by failing to take reasonable measures to abate it. *Harrison v. Barkley*, 219 F.3d 132, 137–38 (2d Cir. 1998) (citing *Farmer v. Brennan*, 511 U.S. 825, 837 (1994)). To state a claim for deliberate indifference to serious medical needs, Gulley must allege facts showing both that his medical need was serious and that the defendants acted with a sufficiently culpable state of mind. *See Smith v. Carpenter*, 316 F.3d 178, 184 (2d Cir. 2003) (citing *Estelle v. Gamble*, 492 U.S. 97, 105 (1976)).

Objectively, the alleged deprivation must be "sufficiently serious." *Wilson v. Seiter*, 501 U.S. 294, 298 (1991). The condition must be "one that may produce death, degeneration, or extreme pain." *See Hathaway v. Coughlin*, 99 F.3d 550, 553 (2d Cir. 1996) (internal quotation marks omitted). Subjectively, the defendants must have been actually aware of a substantial risk that Gulley would suffer serious harm as a result of their conduct. *See Salahuddin v. Goord*, 467 F.3d 263, 280–81 (2d Cir. 2006).

I dismissed the claim against Nurse Durko because Gulley did not describe his injuries from the use of force, so I could not determine whether Nurse Durko failed to treat a serious medical need. Gulley now alleges that he suffered injuries to his back, neck, and ribs and that Nurse Durko did not even examine him. I explained in the Initial Review Order that, although courts have determined that injuries caused by assault or use of excessive force that cause immediate pain and require some treatment but do not have long-lasting effect do not rise to the

7

level of serious medical needs, those determinations generally have been made at summary judgment and not on initial review or a motion to dismiss. *See Adorno v. Semple*, 2016 WL 7469709, at *4 (D. Conn. Dec. 28, 2016) (citing cases). Gulley alleges that, as a result of this incident, he limps. He does not indicate whether the limp was a permanent condition or merely a temporary result of the excessive force and restraints. Because Gulley alleges that Nurse Durko did not even examine him in response to his complaints of injury and severe pain, if his injuries constitute a serious medical need, he has stated a cognizable deliberate indifference claim. Accordingly, I will permit the claim against Nurse Durko to proceed for further development of the record.

In the Complaint, Gulley alleged that, when he was released from in-cell restraints, he showed Nurse Scruggs his swollen and bruised wrists and ankles and told her that he was experiencing pain. However, Nurse Scruggs provided no treatment and noted no injuries in her report. I permitted the claim against defendant Scruggs to proceed for further development of the record.

    C.    <u>Defendant Prior</u>

Gulley asserted a claim against DHO Prior for finding him guilty of disciplinary charges. I dismissed that claim because Gulley alleged no facts suggesting that the guilty finding was not supported by "some evidence." ECF No. 7 at 7. *See Superintendent, Mass. Corr. Inst. v. Hill*, 472 U.S. 445, 455 (1985) (due process requires that hearing officer's decision be supported by "some evidence"). Gulley alleges no new facts in the Amended Complaint relating to that claim. Thus, the claim against defendant Prior remains dismissed.

## CONCLUSION

In addition to the excessive force claim against defendant Blackstone and the deliberate indifference to medical needs claim against defendant Scruggs, the case will also proceed on the excessive force claims against defendants Lizon, Caron, Titus, and Severance, and the deliberate indifference to medical needs claim against defendant Durko. The claim against defendant Prior remains dismissed.

The Court enters the following orders:

(1) **The Clerk shall** verify the current work addresses for defendants Lizon, Caron, Titus, Severance, and Durko with the Department of Correction Office of Legal Affairs, mail a waiver of service of process request packet containing the Amended Complaint and this Order to each defendant at the address provided within **twenty-one (21) days** of this Order, and report to the court on the status of the waiver requests on the thirty-fifth day after mailing. If any defendant fails to return the waiver request, the Clerk shall make arrangements for in-person service by the U.S. Marshals Service on the defendant in his individual capacity and the defendant shall be required to pay the costs of such service in accordance with Federal Rule of Civil Procedure 4(d).

(2) T**he Clerk shall** send Gulley a copy of this Order.

(3) **The Clerk shall** send a courtesy copy of the Amended Complaint and this Order to the Connecticut Attorney General and the Department of Correction Office of Legal Affairs.

(4) The defendants shall file their response to the Amended Complaint, either an answer or motion to dismiss, within **sixty (60) days** from the date the waiver forms are sent. If they choose to file an answer, they shall admit or deny the allegations and respond to the

cognizable claim recited above. They also may include all additional defenses permitted by the Federal Rules.

(5) Discovery, pursuant to Federal Rules of Civil Procedure 26 through 37, shall be completed within **seven months (210 days)** from the date of this order. Discovery requests need not be filed with the court.

(6) All motions for summary judgment shall be filed within **eight months (240 days)** from the date of this order.

(7) Pursuant to Local Civil Rule 7(a), a nonmoving party must respond to a dispositive motion within twenty-one (21) days of the date the motion was filed. If no response is filed, or the response is not timely, the dispositive motion can be granted absent objection.

(8) If Gulley changes his address at any time during the litigation of this case, Local Court Rule 83.1(c)2 provides that he MUST notify the court. Failure to do so can result in the dismissal of the case. Gulley must give notice of a new address even if he is incarcerated. Gulley should write PLEASE NOTE MY NEW ADDRESS on the notice. It is not enough to just put the new address on a letter without indicating that it is a new address. If Gulley has more than one pending case, he should indicate all the case numbers in the notification of change of address. Gulley should also notify the defendants or the attorney for the defendants of his new address.

(9) Gulley shall utilize the Prisoner Efiling Program when filing documents with the court. Gulley is advised that the Program may be used only to file documents with the court. Because local court rules provide that discovery requests are not filed with the court, discovery requests must be served on defendants' counsel by regular mail.

So ordered.

Dated at Bridgeport, Connecticut, this 23rd day of May 2019.

                                              <u>/s/ STEFAN R. UNDERHILL</u>
                                              Stefan R. Underhill
                                              United States District Judge